**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DMK PHARMACEUTICALS CORP., et al.,[1] | Case No. 24-10153 (MFW) (Jointly Administered) |
| Debtors. | |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF
AN ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN OF LIQUIDATION
FOR DMK PHARMACEUTICALS CORPORATION, ADAMIS CORPORATION,
ADAMIS PHARMACEUTICALS CORPORATION, BIOSYN, INC., RHOMBUS
PHARMACEUTICALS CORPORATION, AND US COMPOUNDING, INC.**

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of their federal tax identification numbers, are: (i) DMK Pharmaceuticals Corporation ("DMK") (9727) (ii) Adamis Corporation ("Adamis") (4912); (iii) Adamis Pharmaceuticals Corporation ("Adamis Pharma") (9663); (iv) Biosyn, Inc. ("Biosyn") (4982); (v) Rhombus Pharmaceuticals Corp. ("Rhombus") (6127); and (vi) US Compounding, Inc. ("USC") (7460) (collectively referred to as the "Debtors"). The Debtors' mailing address is: 50 Division Street, Suite 501, Somerville, NJ 08876, with copies to Nelson Mullins Riley & Scarborough LLP, Attn: Lee Hart, Atlantic Station, Suite 1700, 201 17th Street NW, Atlanta, GA 30363; and Gellert Seitz Busenkell & Brown LLC, Attn: Michael Busenkell, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801.

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................................4

Background ..............................................................................................................5

    A.  General Background ..........................................................................5

    B.  The Disclosure Statement and Plan Process .............................5

Argument ................................................................................................................8

    A.  The Plan satisfies the confirmation requirements of the Bankruptcy Code
       and should be confirmed. .......................................................8

    B.  Objections ............................................................................21

A Waiver of any Stay of Confirmation is Appropriate.......................................21

Conclusion ...........................................................................................................22

## **TABLE OF AUTHORITIES**

*In re Armstrong World Indus., Inc.*, 348 B.R. 111 (Bankr. D. Del. 2006).............................8

*In re Nutritional Sourcing Corp.*, 398 B.R. 816 (Bankr. D. Del. 2008) ...............................8

*In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012) ...........................................................8

*In re Tribune Co.*, 476 B.R. 843 (Bankr. D. Del. 2012)........................................................9

*In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154  (3d Cir. 1993) ...................................................................................................9

*Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*,
913 F.2d 873 (11th Cir. 1990) .................................................................................................9

*In re Avia Energy Dev., LLC*, Case No. 0539339 (BJH),
2007 WL 2238039 (Bankr. N.D. Tex. Aug. 2, 2007). .............................................................9

*In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011)................................................12

*In re Wash Mut. Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011)..................................................12

*In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) .........................12

*In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) ..........................................12

*In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005) .............................................................12

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1987) ......................................13

*In re Toy & Sports Warehouse, Inc.*, 37 B.R.141 (Bankr. S.D.N.Y. 1984)...........................13

*In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992). ..............13

*In re Okoreeh-Bahm*, 836 F.2d 1030 (6th Cir. 1988) ..........................................................15

*In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672 (D. Del. 2004) ........................15

*In re NII Holdings, Inc.*, 288 B.R. 356 (Bankr. D. Del. 2002)..............................................15

*In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999)..............................................15

*In re PPI Enterprises, Inc.*, 228 B.R. 339 (Bankr. D. Del. 1998) .........................................15

*In re Resorts Int'l, Inc.*, 145 B.R. 412 (Bankr. D.N.J. 1990) ...............................................16

*In re Lisanti Foods*, 329 B.R. 491, 503 (D.N.J. 2005)..........................................................16

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ...............................................18

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1 (D. Conn. 2006)............18

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submits this memorandum of law (this "**Memorandum**") in support of final approval and confirmation of the *First Amended Joint Chapter 11 Plan of Liquidation for DMK Pharmaceuticals Corporation, Adamis Corporation, Adamis Pharmaceuticals Corporation, Biosyn, Inc., Rhombus Pharmaceuticals Corporation, and US Compounding, Inc.* filed on September 6, 2024 [Docket No. 451] (as may be further revised and amended, the "**Plan**").  The Debtors respectfully request confirmation of the Plan pursuant to the proposed form of order filed contemporaneously herewith (the "**Confirmation Order**"). In support of the Plan, the Debtors rely upon and incorporate by reference the (a) *Declaration of Seth Cohen, Chief Financial Officer of DMK Pharmaceuticals Corporation in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 3]; (b) *Declaration of Seth A. Cohen in Support of Final Approval of the First Amended Joint Chapter 11 Plan of Liquidation for DMK Pharmaceuticals Corporation, Adamis Corporation, Adamis Pharmaceuticals Corporation, Biosyn, Inc., Rhombus Pharmaceuticals Corporation, and US Compounding, Inc.* filed contemporaneously herewith (the "**Cohen Declaration**"), and (c) all other matters properly of record.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## PRELIMINARY STATEMENT

1.     The Debtors respectfully request the Court enter an order confirming the Plan, which is a liquidation plan to liquidate the Debtors' remaining assets and distribute the proceeds thereof to parties in interest, and is supported by the Official Committee of Unsecured Creditors appointed in these cases (the "**Committee**").

# BACKGROUND

**A.**     **General Background**

2.     On February 2, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing these cases (the "**Chapter 11 Cases**").

3.     The Debtors continue in possession of their property and manage their estates as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No trustee or examiner has been appointed in the Chapter 11 Case.

5.     On February 20, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee in the Chapter 11 Case [Docket No. 56].

6.     On March 22, 2024, the Court entered an *Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim; and (C) Approving Notice Thereof* [Docket No. 176] (the "**Bar Date Order**"). Among other things, the Bar Date Order established April 24, 2024, as the general claims bar date and July 31, 2024, as the governmental claims bar dates for the submission of Proofs of Claim against the Debtors.

**B.**     **The Disclosure Statement and Plan Process**

7.     On August 2, 2024, the Debtors filed their *Joint Chapter 11 Plan of Liquidation for DMK Pharmaceuticals Corporation, et al.* [Docket No. 408] and related Disclosure Statement [Docket No. 409]. On August 14, 2024, the Debtors filed their *Motion for Entry of an Order (I) Approving Disclosure Statement, (II) Scheduling a Hearing on Plan Confirmation and Deadlines Related Thereto, (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto, and (IV) Granting Related Relief* [Docket No. 423] (the "**Confirmation**

**Procedures Motion**"), seeking, among other things, approval of the Debtors' disclosure statement and solicitation procedures and requesting to set various deadlines for confirmation of the Plan.

8.      Upon receipt of various comments to the Plan and Disclosure Statement from the Committee and Office of the U.S. Trustee, and after negotiation and incorporation of such comments, the Debtors filed the Plan and *First Amended Disclosure Statement Pursuant to 11 U.S.C. § 1125 of the Bankruptcy Code for the First Amended Joint Plan of Liquidation, et al.* [Docket No. 452] (the "**Disclosure Statement**"), each on September 6, 2024.

9.      On September 12, 2024, the Court entered the *Order Granting Debtors' motion for Entry of an Order (I) Approving Disclosure Statement, (II) Scheduling a Hearing on Plan Confirmation and Deadlines Related Thereto, (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto, and (IV) Granting Related Relief* [Docket No. 463] (the "**Confirmation Procedures Order**").  In the Confirmation Procedures Order, the Court approved the Disclosure Statement as containing adequate information as required by 11 U.S.C. § 1125, approved the form of notices of the confirmation hearing on the Plan and solicitation packages, and set deadlines for the solicitation and confirmation process.

10.     Among other things, the Court set the following deadlines in the Confirmation Procedures Order:

(a)      The Plan and Disclosure Statement were to have been transmitted within three (3) days after entry of the Confirmation Procedures Order;

(b)      Objections to confirmation of the Plan were due on October 17, 2024;

(c)      The deadline for parties entitled to vote to submit ballots accepting or rejecting the plan was October 17, 2024;

(d)     The deadline for the Debtors to file a report certifying to the results of the voting with respect to the Plan was October 24, 2024.

11.     As set forth in the *Declaration of Rachel A. Sternlieb as Counsel to the Debtors Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtors' First Amended Joint Chapter 11 Plan of Liquidation* filed contemporaneously herewith (the "**Voting Report**"), the Debtors received nine (9) votes from parties entitled to vote, broken down as follows:

| Class | Total Ballots Received | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | Amount | Number | Amount | Number |
| Class 3 – General Unsecured Claims | $3,191,507.88 | 9 (100%) | $0 (0.00%) | 0 (0.00%) |
| Class 4 – Subordinated Claims | $0 (0.00%) | 0 (0.00%) | $0 (0.00%) | 0 (0.00%) |

*See* Voting Report, at ¶ 13.

12.     The Debtors received votes on the Plan from various other parties whose claims were subject to objection as of the Voting Record Date, so their votes were not counted.  These votes are detailed in the Voting Report at paragraph 14.

13.     Regarding Executory Contracts and Unexpired Leases, pursuant to Article XIII of the Plan, all Executory Contracts and Unexpired Leases are deemed rejected as of the Effective Date, unless previously dealt with by the Debtors, previously expiring by its own terms or otherwise subject to a contemporaneous motion to assume and assign by the Debtors.  The Plan does not contemplate the assumption and assignment of any Executory Contracts or Unexpired Leases.

14.     The Plan further requires that Proofs of Claim for damages based upon rejected of Executory Contracts or Unexpired Leases shall be filed within thirty (30) days after entry of the Confirmation Order, and in such case such Claims will be treated as Class 3 Unsecured Claims

and may be objected to in accordance with the Plan and other applicable law.  However, by this Motion, the Debtors request that the Court alter the time period such that Proofs of Claim be due within thirty (30) days after the Effective Date of the Plan to provide parties sufficient time and notice to file proofs of claim after confirmation becomes effective.

15.     The Debtors received no objections to confirmation of the Plan.  However, the Debtors did receive informal comments from the Committee and U.S. Trustee prior to the objection deadline, which the Debtors have incorporated into the Plan via the proposed Confirmation Order.

### ARGUMENT

**A.     The Plan satisfies the confirmation requirements of the Bankruptcy Code and should be confirmed.**

16.     By this Memorandum, the Debtors submit that the Plan should be confirmed, as it satisfies Section 1129 of the Bankruptcy Code.

**(i)     Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code.**

17.     To achieve confirmation of the Plan, the Debtors must demonstrate, by a preponderance of the evidence, that they comply with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006); *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008). As set forth in this Memorandum, the Plan satisfies all provisions of Bankruptcy Code section 1129 and complies with all other applicable Bankruptcy Code sections, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. *See In re W.R. Grace & Co.*, 475 B.R. 34, 173 (D. Del. 2012).

**(ii)     Section 1122: The Plan Classifications of Claims and Equity Interests Are Appropriate.**

18.    Bankruptcy Code section 1122 provides, in pertinent part:

(a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  Section 1122 affords the proponent of a plan with significant flexibility in the classification of claims and interests, so long as there is a reasonable basis for such classification. *See In re Tribune Co.*, 476 B.R. 843, 854 (Bankr. D. Del. 2012) (finding that "Section 1122(a) is permissive," in that "it does *not* provide that *all* similar claims must be placed in the same class"); *see also In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158-59 (3d Cir. 1993); *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Avia Energy Dev., LLC*, Case No. 0539339 (BJH), 2007 WL 2238039, at *2 (Bankr. N.D. Tex. Aug. 2, 2007).

19.    Here, the Plan designates the following Classes:

| Class | Treatment | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| Class 2 – Allowed Secured Claims | Unimpaired, deemed to accept | Deemed to Accept |
| Class 3 – Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – Subordinated Claims | Impaired | Entitled to Vote |
| Class 5 – Equity Interests | Impaired | Deemed to Reject |

Such classifications comply with Section 1122 of the Bankruptcy Code. All Claims and Equity Interests within a Class are substantially similar to the other Claims and Equity Interests in their class.  Additionally, each Claim and Interest differ from Claims and Interests in other Classes (if

any) based upon such Claim or Interest's legal or factual nature.  Specifically, the only Claim in Class 4 is the DOJ Claim, which is the product of substantial negotiation among the Debtors, the Committee and the United States Department of Justice, documented in the DOJ Claim Stipulation and approved (in part) in the related criminal proceeding by the United States District Court for the Southern District of New York.

20.     Thus, the Debtors submit that the classification scheme within the Plan is consistent with Section 1122.

**(iii)     Section 1123(a): The Plan's Content is Appropriate**

21.     Bankruptcy Code section 1123(a) elucidates seven requirements which a plan must contain. 11 U.S.C. § 1123(a).  Each such requirement has been met:

(a)     The Plan designates Classes of Claims and Interests as required by Bankruptcy Code section 1123(a)(1). *See* Article II.

(b)     The Plan sets forth which Classes of Claims and Equity Interests are impaired or unimpaired as required by Bankruptcy Code and are entitled to vote.  *See id.*

(c)     The Plan provides for equal treatment within each Class as required by section 1123(a)(4). *See id.*

(d)     The Plan provides for adequate means for implementation including: (i) creation of the Liquidation Trust to be managed by the Liquidation Trustee upon negotiation with the Committee and rendering Holders of Claims and Equity Interests beneficiaries of the Liquidation Trust, (ii) conveyance of the Debtors' remaining assets, including its remaining Cash, into the Liquidation Trust, (iii) vesting the Liquidation Trustee with standing to reconcile Claims and pursue Causes of Action, and (iv) substantive consolidation of the Debtors' estates.  Accordingly, the Plan satisfies the requirements of Section 1125(a)(5).

(e)     The Plan does not contain any provisions for the issuance of new equity securities. As such, Bankruptcy Code section 1123(a)(6) is not applicable.

(f)     The Plan proposes to retain Brian Ryniker of R K Consultants, LLC as the Liquidation Trustee, who is a reputable and known insolvency fiduciary and was selected after consultation with the Committee.  The Plan does not otherwise select any officer, director or trustee of the Debtors.  Accordingly, the requirements of Section 1123(a)(7) of the Bankruptcy Code are satisfied.

**(iv)     Section 1123(b): the Plan Contains Certain Permissible Provisions**

22.     Bankruptcy Code section 1123(b) sets forth permissive provisions that may be incorporated into a plan. A plan may: impair or unimpair any class of claims; provide for the assumption or rejection of executory contracts and unexpired leases; provide for the settlement or retention of a debtor's claims; modify or leave unaffected the rights of holders of claims; and include any provision not inconsistent with the Bankruptcy Code. 11 U.S.C. § 1123(b).

23.     The Plan provides for the classification and impairment or unimpairment of certain Classes. *See* Article VI. The Plan also contains procedures for the distributions and the allowance or disallowance of Claims. *See* Article X.

24.     Consistent with Bankruptcy Code section 1123(b), the Plan also contains provisions related to exculpation. *See* Article X. Specifically, the Plan provides for no third-party releases; rather, it only provides that Exculpated Parties will have not have or incur any liability to any Person for any Exculpated Claim.  The term "Exculpated Parties" is limited to certain individual directors and officers of the Debtors, the Committee and the members thereof, and the Debtors' estate professionals and the partners, managers and employees thereof (subject to modifications requested by the United States Trustee's office, which have been incorporated into the Confirmation Order).  Exculpated Claims are limited to claims arising after the Petition Date,

and relate, generally, to the Debtors' Chapter 11 Cases, provided that Exculpated Claims do <u>not</u> include acts or omissions constituting willful misconduct, gross negligence or fraud.

25.     Estate fiduciaries and other parties participating in the plan process are frequently the subject of exculpation provisions. *See, e.g.*, *In re W.R. Grace & Co.*, 446 B.R. 96, 132-33 (Bankr. D. Del. 2011); *In re Wash Mut. Inc.*, 442 B.R. 314, 350-51; *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013). Without protection for these parties, key constituents would not participate in the plan process.  *See also In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (holding that an exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability.").

26.     The Plan provides for the approval of the DOJ Claim Stipulation, which was negotiated by the Debtors and Department of Justice and memorialized in the DOJ Claim Stipulation and DOJ Judgment.  The Debtors request that the Confirmation Order effectuate the DOJ Claim Stipulation.

27.     The Plan provides for the substantive consolidation of the Debtors and their Estates. *See* Section VIII(A) and (B).  Regarding substantive consolidation, courts have generally observed that (1) entity separateness should be observed absent compelling circumstances; (2) the harm addressed by substantive consolidation is remedial for debtor actions, not creditor actions; (3) mere benefit to case administration is not, itself, sufficient to justify substantive consolidation; (4) substantive consolidation should be granted sparingly,; and (5) substantive consolidation should not be employed offensively.  *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  In the Third Circuit, "what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity boarders and treated them as one legal entity, or (ii)

postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." *Id.*

28.    In these cases, the Debtors proposed substantive consolidation of their Estates in the Plan and received no objections thereto.  Moreover, grounds exist to substantive consolidate the Debtors and their Estates.  As of the Petition Date, the only operating entity was the Debtors' parent entity, DMK Pharmaceuticals Corporation.  Due to the poor state of the Debtors' books and records and the relatively short duration of employment of the Debtors' officers and directors prior to the Petition Date, the Debtors do not have a reliable way to identify which assets and liabilities pertained to each Debtor entity in most cases.  Since the Petition Date, the Debtors have been operating on a mostly consolidated basis. The Debtors have been viewing their assets and liabilities on a consolidated basis, the Plan is predicated on a consolidated Liquidation Trust and distribution, and the Debtors solicited the Plan on a consolidated basis.  *See* Cohen Declaration, at ¶ 26.  Good cause exists to substantively consolidate the Debtors and their Estates.

### (v)    Section 1129(a)(2): The Plan Complies with the Bankruptcy Code

29.    Bankruptcy Code section 1129(a)(2) requires that the plan proponent "comp[y] with the allocable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history of Bankruptcy Code section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Bankruptcy Code sections 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1987). *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R.141, 149 (Bankr. S.D.N.Y. 1984); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992).

30.     The Court determined that the Disclosure Statement complies with Section 1125 of the Bankruptcy Code in the Confirmation Procedures Order.  Commencing on or about August 2, 2024, the Debtors' noticing agent, BMC Group, Inc. ("BMC") posted links on the Debtor's case website maintained by BMC at  https://cases.creditorinfo.com/dmk to provide parties with access to, among other documents, copies of the following: (i) the (a) Plan, as amended [D.I. 408, 451, 479-1]; (b) Disclosure Statement for the Debtors' Plan, as amended [D.I. 409, 452, 479]; (c) notices of filing related thereto [D.I. 410, 411, 453]; (ii) the Disclosure Statement and Solicitation Procedures Motion [D.I. 423]; (iii) the Notice of Hearing to Consider Approval of Debtors' Disclosure Statement and the Objection Deadline Related Thereto [D.I. 415]; (iv) Certification of Counsel Regarding Debtors' Disclosure Statement and Solicitation Procedures Motion [D.I. 457]; (v) the Order Granting Debtors' Motion for Entry of an Order (I) Approving Disclosure Statement; (II) Scheduling a Hearing on Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief [D.I. 463] ("Disclosure Statement and Solicitation Procedures Order"); and (vi) the Notice of Confirmation Hearing [D.I. 466]. Commencing on September 16, 2024, the Debtors through their noticing agent, BMC caused Solicitation Packages to be distributed to Holders of Claims in the Voting Classes as of the Voting Record Date pursuant to the provisions therefor in the Plan [D.I. 481].  Accordingly, the Debtors have complied with the provisions of Sections 1125 and 1126 and fulfilled the requirements of Bankruptcy Code section 1129(a)(2).

**(vi) Section 1129(a)(3): The Plan Has Been Proposed in Good Faith**

31.     As required by Bankruptcy Code section 1129(a)(3), the Plan has been "proposed in good faith and not by any means forbidden by law." The determination of good faith should be

left to the Court's common sense and judgment. *In re Okoreeh-Bahm*, 836 F.2d 1030, 1033 (6th Cir. 1988).

32.     The Third Circuit has addressed the good faith standard under Bankruptcy Code section 1129(a)(3), stating that "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point on inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3rd Cir. 2000); *see also In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672, 675 (D. Del. 2004) (finding that good faith requires "that (1) the plan be consistent with the objectives of the Bankruptcy Code; (2) the plan be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved; or (3) there was fundamental fairness in dealing with the creditors."); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999); *In re PPI Enterprises, Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998).

33.     The Plan is the result of arm's-length negotiations among the Debtors and Committee, which effectuates the DOJ Claim Stipulation that the Debtors negotiated with the Department of Justice, without which the Plan may not have been confirmable.  The goal of the Plan is to maximize distributions to creditors via liquidation of the Debtors' remaining assets and prosecution of Causes of Action, a legitimate and honest purpose that has been accomplished here. Further, the Plan has been proposed in compliance with all applicable laws, rules, and regulations. As such, the Plan complies with Bankruptcy Code section 1129(a)(3).

 **(vii)**  **Section 1129(a)(4): The Plan Provides for Approval of Certain Administrative Expenses**

34.     Bankruptcy Code section 1129(a)(4) requires that payments by a debtor "for services or for costs and expenses in connection with the case, or in connection with the plan and

incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable. *See* 11 U.S.C. § 1129(a)(4); *see also In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Lisanti Foods*, 329 B.R. 491, 503 (D.N.J. 2005).

35.     The Plan provides that any payments made or promised by the Debtor for services rendered in connection with the Chapter 11 Case will be subject to review by the Court and other parties in interest.  Among other things, Administrative Expense Claims and Fee Claims shall be paid only if Allowed, and with respect to Fee Claims specifically, after an application and a notice and objection period. These procedures satisfy Bankruptcy Code section 1129(a)(4).

### (viii)   Section 1129(a)(5): The Plan Contains Proper Disclosures

36.     Bankruptcy Code section 1129(a)(5) requires that a plan proponent disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor of the debtor under the plan." 11 U.S.C. § 1129(a)(5)(A)(i).

37.     The Debtors will no longer maintain employees or going-concern operations after the Effective Date.  Instead, the Plan contemplates the vesting of the Debtors' assets into the Liquidation Trust under the management of the Liquidation Trustee.  The identity of the proposed Liquidation Trustee is disclosed in the Plan.  Accordingly, Bankruptcy Code section 1129(a)(5) has been met.

### (ix)   Section 1129(a)(6): No Governmental Regulatory Commission Has Jurisdiction over the Rates of the Debtors

38.     Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6). The Plan does not provide for any rate changes over which

16

a governmental regulatory commission has jurisdiction. The Debtors submit, therefore, that this provision of the Bankruptcy Code is not applicable to the Plan.

**(x)     Section 1129(a)(7): The Plan is in the Best Interest of All Creditors**

39.     Bankruptcy Code section 1129(a)(7) requires that a plan be in the best interests of creditors and equity holders, commonly referred to as the "best interests" test. The best interests test requires that holders of impaired claims:

> (i)     have accepted the plan; or
>
> (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A).

40.     As set forth in the Disclosure Statement, Holders of Allowed Claims should receive under the Plan no less than the amount that such Holder would receive in a Chapter 7 Liquidation. As illustrated by analysis performed by the Debtors and their professionals attached as Exhibit C to the Disclosure Statement, the projected recovery in a Chapter 7 is inferior to the projected recovery under the Plan.  Therefore, Section 1129(a)(7) of the Bankruptcy Code is satisfied.

**(xi)    Section 1129(a)(8): All Classes of Claims and Interests are Deemed to Accept the Plan**

41.     Bankruptcy Code section 1129(a)(8) requires that each class of claims either vote to accept a plan or are not impaired under a plan. 11 U.S.C. § 1129(a)(8).

42.     As set forth in the Voting Report, Holders of Class 3 Claims entitled to vote who submitted ballots voted to confirm the Plan.  No Holder of Class 4 Claims submitted a ballot. Holders of Equity Interests in Class 5 were deemed to reject and therefore were not entitled to vote.  Accordingly, Section 1129(a)(8) is inapplicable.

     **(xii)**    **Section 1129(a)(9): The Plan Provides for Payment in Full of Allowed Priority, Administrative, and Tax Claims**

43.     Bankruptcy Code section 1129(a)(9) requires that certain types of priority claims must receive specific treatment unless the holders of such claims agree to different treatment. 11 U.S.C. § 1129(a)(9). The Plan provides for the payment of Allowed Administrative Expense Claims, Fee Claims, and Priority Tax Claims. Therefore, the Plan meets the requirements of Bankruptcy Code section 1129(a)(9).

     **(xiii) Section 1129(a)(10): At Least One Class of Impaired Classes Has Accepted the Plan**

44.     Bankruptcy Code section 1129(a)(10) requires that, "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."  As noted above, Claims in Class 3 and Class 4 are impaired.  Pursuant to the Voting Report, Holders of Claims in Class 3 voted to confirm the Plan, while not ballots were submitted by Holders of Class 4 Claims.  Because at least one class of impaired claims has voted to confirm the Plan, Section 1129(a)(10) is satisfied.

     **(xiv)**    **Section 1129(a)(11): The Plan is Feasible**

45.     Bankruptcy Code section 1129(a)(11) requires that the Court find that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). This is referred to as the "feasibility" standard and requires two determinations: (i) the debtor's ability to consummate the provisions of the plan, and (ii) the debtor's ability to reorganize as a viable entity. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *Mercury Capital Corp. v. Milford Conn. Assocs.,*

*L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) ("A 'relatively low threshold of proof' will satisfy the feasibility requirement.") (*quoting In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (stating that the definition of feasibility "has been slightly broadened and contemplates whether [a] debtor can realistically carry out its Plan . . . and [b] whether the Plan offers a reasonable prospect of success and is workable").

46.     The Plan contemplates transferring all of the Debtors' remaining assets into the Liquidation Trust on the Effective Date, include all the Debtors' Cash.  The Liquidation Trustee was chosen in consultation with the Committee, and the form of Liquidation Trust Agreement is prepared and appended to the Disclosure Statement.  The Plan's purpose – to liquidate the Debtors' remaining assets and distribute the proceeds – is reasonably likely to succeed.  Therefore, Section 1129(a)(11) is satisfied.

**(xv)     Section 1129(a)(12): All Statutory Payment Obligations Have Been or Will be Paid**

47.     Section 1129(a)(12) requires that a plan provide for the payment of fees payable under 28 U.S.C. § 1930. 11 U.S.C. § 1129(a)(12). Bankruptcy Code section 507 provides that such fees are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).

48.     The Plan provides that all statutory fees will be paid by the Debtors on or before the Effective Date. Following the Effective Date, statutory fees will be paid from cash on hand. Accordingly, the requirements of section 1129(a)(12) are met.

**(xiv)     Section 1129(a)(13) Through Section 1129(a)(16) Do Not Apply to the Plan**

49.     Section 1129(a)(13) requires that a plan provide for the continuation of all retiree benefits, as such term is defined in Section 1114.  The Debtors do not provide retiree benefits. Therefore, Section 1129(a)(13) is not applicable.

50.    Section 1129(a)(14) relates to the payment of domestic support obligations. The Debtors are not subject to any domestic support obligations; therefore, this provision is not applicable.

51.    Section 1129(a)(15) only applies to cases where the debtor is an individual; therefore, this provision is inapplicable.

52.    Section 1129(a)(16) applies to transfers of property by a corporation or trust that is not money, business, or commercial corporation or trust. The Debtors were for profit, commercial enterprises. Therefore, Section 1129(a)(16) does not apply.

**(xvi)    Section 1129(b): The Plan Satisfies the "Cram Down Requirements"**

53.    Bankruptcy Code section 1129(b) provides a mechanism to confirm a plan when all the requirements of Bankruptcy Code section 1129(a) have been met, except Section 1129(a)(8), which is the case for the Plan.  The Plan contemplates three (3) classes being Impaired: Class 3 (General Unsecured Claims), Class 4 (Subordinated Claims) and Class 5 (Equity Interests). Class 3 voted to confirm the Plan, no Holders of Class 4 Claims submitted a ballot, and Holders of Class 5 Equity Interests are deemed to reject; therefore, the Plan is a cramdown plan.

54.    Under Section 1129(b)(1), the Plan should be confirmed if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  The Plan contemplates distributions to Holders of Class 4 Claims only after the satisfaction in full of Allowed senior priority claims.  *See* Article V(D).  The Plan further contemplates distributions to Holders of Class 5 Equity Interests only after the satisfaction of Allowed senior priority claims.  *See* Article V(E).  The Plan's treatment of Claims and Equity Interests in Class 4 and 5, respectively, is therefore fair and equitable, as described in Section 1129(b)(2)(B) and (C).  As described above, the Plan contemplates equal of

property to Holders of Claims and Equity Interests within each Class pro rata and equally, so it does not discriminate unfairly.  Accordingly, Section 1129(b) is satisfied.

**(xvii)   Section 1129(c) through Section 1129(e) Have Been Satisfied**

55.     Bankruptcy Code section 1129(c) requires the Court confirm only one plan. See 11 U.S.C. § 1129(c). The Plan is the only plan being confirmed in this Chapter 11 Case, thus satisfying Bankruptcy Code section 1129(c).

56.     The principal purpose of the Plan is not the avoidance of taxes or the application of section 5 of the Security Act of 1933. Therefore, Bankruptcy Code section 1129(d) is satisfied.

57.     Bankruptcy Code section 1129(e) is not applicable as the Chapter 11 Case is not a "small business case."

**B.**   **Objections**

58.     The Debtors have received no formal objections to the Plan.  However, the Debtors have received informal comments to the Plan from the Committee and U.S. Trustee's office, which the Debtors have incorporated into the Plan via amendments and the proposed Confirmation Order.

**C.**   **A Waiver of Any Stay of Confirmation is Appropriate**

59.     The Debtors request that the Court cause the Confirmation Order to become effective immediately upon its entry, notwithstanding the 14-day stay otherwise imposed by Bankruptcy Rule 3020. The purpose of Bankruptcy Rule 3020(e) is to allow parties in interest with time to appeal a confirmation order before such appeal is moot. See FED. R. BANKR. P. 3020(e), Adv. Comm. Notes, 1999 Amend.

60.     Here, such waiver is appropriate because it allows for the expeditious occurrence of the Effective Date and transfer of assets to the Liquidation Trust.  No party has objected to the Plan. Moreover, prior to the Effective Date, the Debtors will continue incurring some expenses, including payroll, to pay for two (2) employees still employed through the Effective Date.  This

small ongoing expense should be eliminated as quicky as possible to preserve maximum value for creditors.  the Debtors submit that good cause exists to waive the requirements of Bankruptcy Rule 3020(e).

## **CONCLUSION**

For all the foregoing reasons, the Debtors respectfully submit that the Court should enter an order confirming the Plan in the form of the Confirmation Order submitted by counsel to the Debtors, and order such further relief as the Court deems just, equitable and proper.


Dated:  October 24, 2024        GELLERT SEITZ BUSENKELL & BROWN LLC
       Wilmington, Delaware

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5800
Facsimile:  (302) 425-5814
E-mail: mbusenkell@gsbblaw.com

- and -

Lee B. Hart (*Admitted Pro Hac Vice)*
Adam D. Herring (*Admitted Pro Hac Vice)*
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
E-mail:  lee.hart@nelsonmullins.com
         adam.herring@nelsonmullins.com

- and -

Dylan G. Trache (*Admitted Pro Hac Vice*)
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
101 Constitution Avenue, NW, Suite 900
Washington, D.C. 20001
Telephone: (202) 689-2800
Facsimile:  (202) 689-2860
E-mail:  dylan.trache@nelsonmullins.com

- and -

Rachel A. Sternlieb (*Admitted Pro Hac Vice*)
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
1400 Wewatta Street, Suite 500
Denver, CO 80202
Telephone: (303) 853-9900
Facsimile: (303) 583-9999
E-mail: rachel.sternlieb@nelsonmullins.com

***Counsel to the Debtors in Possession***